264 So.2d 270 (1972)
SEWERAGE AND WATER BOARD OF NEW ORLEANS
v.
Jack SANDERS, d/b/a Laguna Construction Company, et al.
No. 4614.
Court of Appeal of Louisiana, Fourth Circuit.
June 20, 1972.
Writ Refused September 27, 1972.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr. and Robert M. Contois, Jr. and John A. Gordon, Special Counsel, New Orleans, for plaintiff-appellant.
Malcolm W. Monroe and Deutsch, Kerrigan & Stiles, New Orleans, Frederick B. Alexius, New Orleans, of counsel, for defendants-appellees.
Before SAMUEL, REDMANN and STOULIG, JJ.
STOULIG, Judge.
This is an appeal from a judgment maintaining an exception of prescription to the plaintiff's action sounding in maritime tort. Appellant urges that the trial court erred in applying the doctrine of prescription rather than the maritime doctrine of laches. Involved is the issue of whether Louisiana *271 courts should apply the admiralty doctrine of laches or the law of prescription in determining whether a suit based upon a maritime tort has been timely instituted.
A brief resume of the facts pertinent to our discussion of the merits of this appeal reflects that on February 3, 1967, plaintiff-appellant, Sewerage and Water Board of New Orleans, entered into a written contract with the defendant, Jack Sanders, doing business as Laguna Construction Company, for the construction of sewerage facilities in New Orleans East. An appropriate performance bond was furnished and the contract duly recorded.
Various phases of the project were subcontracted and the defendant Great Lakes Dredge & Dock Company contracted with a subcontractor to dredge and backfill a pipeline trench across the Mississippi-Gulf Outlet.
Work under the contract commenced on March 14, 1967, but ceased on August 5, 1967, after a dispute between the plaintiff and the prime contractor. On October 25, 1967, by letter, a formal demand was made upon the prime contractor to repair a damaged sewer line and resume performance of the contract. Neither of these demands was met, which prompted plaintiff's letter of November 22, 1967, ordering the defendant to surrender possession of the project.
Several days later, on November 29, 1967, the plaintiff recorded the notice of default of the contract. Within 45 days of the inscription of the notice of default, Great Lakes filed its claim in the sum of $173,623.25.
Appellant filed a concursus proceeding pursuant to LSA-R.S. 38:2243 on February 28, 1969. Also forming part of the petition was the tort claim against the defendant Great Lakes alleging that it performed the work of backfilling the trench in an improper and unworkmanlike manner by failing to protect the sewer pipeline. It is this segment of the petition with which we are concerned on this appeal.
Various defenses were urged by Great Lakes by way of a rule, several exceptions, and a motion to strike. Its rule to dismiss the concursus proceedings, based on the fact it was instituted more than a year after recordation of the default, was denied by the trial court. Exception of no cause of action predicated upon plaintiff's failure to allege the specific facts or circumstances constituting improper or unworkmanlike performance was maintained, and the plaintiff's action seeking damages ex delicto was dismissed. Exceptions of no right of action and prescription, together with a motion to strike the tort claim as being outside of the scope of a concursus proceeding, were not passed upon.
The matter was then appealed to this court and that portion of the judgment dismissing the plaintiff's suit was reversed. The judgment maintaining the exception of no cause of action was amended so as to order the appellant to amend its petition to state with particularity in which factual respects the work was performed in an improper or unworkmanlike manner, and the matter was remanded to the trial court for this purpose (239 So.2d 414 (1970)). After writs were refused by the Supreme Court, 256 La. 912, 240 So.2d 374, the appellant on December 8, 1970, amended and supplemented its petition to set forth the defendant's specific acts of negligence.
Subsequently, on December 14, 1970, the trial court maintained the exception of prescription previously filed by the defendant on March 13, 1969, and which it had taken under advisement. It expressly reaffirmed the plaintiff's right to assert the prescribed obligation as a defense accorded by LSA-C.C.P. art. 424.
Plaintiff again appealed which the defendant moved to dismiss contending that the judgment of the trial court is interlocutory since the concursus proceeding is still pending coupled with the plaintiff's right to urge its prescribed claim as a defense.
*272 This motion has already been denied by this court (246 So.2d 734 (1971)).
No useful purpose would be served in particularizing the alleged negligence of Great Lakes. Suffice it to state that it was first urged in plaintiff's petition filed on February 28, 1969, and later pleaded with specificity in the supplemental petition of December 8, 1970. There is no serious dispute that the tort, as pleaded, is maritime in nature and that the Civil District Court has concurrent jurisdiction to entertain this action under the "saving to suitors" clause of 28 U.S.C. § 1333.
The entire record consists of pleadings, responses, and preliminary proceedings. It reflects that the negligent conduct of the defendant Great Lakes set forth in the plaintiff's supplemental petition were overt acts. In view of the fact that all work ceased on the contract on August 5, 1967, of necessity, defendant's negligent actions must have occurred on, or prior to, this date. This action, including the tort claim against Great Lakes, was instituted some 18 months after the termination of all work and resulted in the filing of an exception pleading the prescription of one year, which was maintained by the trial court.
Posed for our consideration is whether the timeliness of plaintiff's suit is to be determined by the one-year prescription of LSA-C.C. art. 3536, applicable to offenses or quasi offenses, or by the admiralty doctrine of laches, which bars recovery when an inordinate delay in the filing of a suit under the circumstances of the case has prejudiced the defendant's ability to defend. In contrast to our doctrine of prescription, time alone is not the only element of laches, for also involved is the equitable consideration of consequential prejudice to the defendant occasioned by the delay.
Appellant maintains that this action being cognizable in admiralty the State is obliged to apply the maritime law of laches. In opposition thereto, appellee contends since the exception of prescription is procedural rather than substantive, that in accordance with the general principle of the conflict of laws, this procedural law of the forum governs.[1] To properly adjudicate the merits of the respective contentions, it must first be determined if prescription and laches each is procedural or substantive in character.
Both state and federal courts have recognized that LSA-C.C. art. 3536, which provides that actions for offenses and quasi offenses prescribe in one year, is procedural rather than substantive. This conclusion is predicated on the fact that Article 3536 bars the remedy but does not extinguish the right. In other words, the one-year period is the delay during which the enforcement of a tort action must be filed and the failure to do so leaves the remedy vulnerable to an exception of prescription. The prescriptive period is not a statutory peremption which extinguishes the cause of action if not exercised within the time prescribed in the codal article. Fidelity & Casualty Company of New York v. C/B Mr. Kim, 345 F.2d 45 (5th Cir. 1965); Page v. Cameron Iron Works, Inc., 259 F.2d 420 (5th Cir. 1958); Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953); Succession of Aurianne, 219 La. 701, 53 So.2d 901 (1951); Carpenter v. Cox, 186 So. 863 (La.App.2d Cir. 1939).
The federal courts have consistently treated the doctrine of laches as a substantive right and have insisted that its application by the state courts is essential to insure uniformity in the judicial administration of maritime law. They maintain in effect that to substitute in lieu of the substantive right of laches, a statute of limitations having a lesser term than would constitute an inordinate delay, would be a deprivation of a substantial admiralty right granted by federal law. While it is permissible for a state statute to supplement *273 federal maritime policies, in doing so it must recognize that the source of the controlling law is national and that it cannot adversely affect any rights created by the dominant federal law. As a corollary to this exposition of authority, the United States Supreme Court in the case of Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 205, 98 L.Ed. 143 (1953), decreed as follows:
"* * * [A]ction is a maritime tort, a type of action which the Constitution has placed under national power to control in `its substantive as well as its procedural features * * *.' Panama R. Co. v. Johnson, 264 U.S. 375, 386, 44 S. Ct. 391, 393, 68 L.Ed. 748. * * *"
And in the case of Garrett v. Moore-McCormack Co., 317 U.S. 239, 245, 63 S. Ct. 246, 251, 87 L.Ed. 239 (1942), the United States Supreme Court after acknowledging the concurrent jurisdiction of the state courts reaffirmed the supremacy of the federal law in admiralty and maritime matters. The Court made the following comment:
"It must be remembered that the state courts have concurrent jurisdiction * * *. The source of the governing law applied is in the national, not the state, governments. If by its practice the state court were permitted substantially to alter the rights of either litigant, as those rights were established in federal law, the remedy afforded by the state would not enforce, but would actually deny, federal rights which Congress, by providing alternative remedies, intended to make not less, but more secure. * * *"
The question of whether prescription or laches is the proper limitation to a maritime tort action brought on a civil side of a federal court was squarely presented in the case of Oroz v. American President Lines, 259 F.2d 636 (2d Cir. 1958). In resolving this issue, the court stated at pages 638, 639:
"Sound judicial administration of maritime claims requires uniformity with respect to the measure of limitations as well as with respect to such matters as contributory negligence and burden of proof. * * *
"For these reasons we are of the opinion that the proper measure of the time within which suit must be commenced is the admiralty doctrine of laches, not a local statute of limitations. * * *"
Subsequently, in the case of Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2d Cir. 1963), after noting that laches and not the statute of limitation was the controlling principle with respect to the effect of a delay in bringing suit, the court observed:
"* * * [This] would also be true if the suit against Victory Carriers and Onassis Corp. had been brought in a state court under the saving clause. For it is now clear that the maritime law controls all `substantive' issues in the disposition of maritime claims regardless of the form or forum of suit. * * *"
Alluding to the effect of local laws of prescription or limitation on substantive rights in a maritime injury, the case of Flowers v. Savannah Machine & Foundry Co., 310 F.2d 135, 138 (5th Cir. 1962), answers the query:
"What is left for local law? There is nothing left save an occasional use as a reference guide in determining whether the maritime principle of laches bars the suit. * * *"
From the foregoing jurisprudence, all of which is federal in origin, the doctrine of laches is a substantive right which cannot be adversely altered by the application of the procedural law of the forum, i. e. prescription or limitation, in maritime tort actions filed in state courts under the "saving to suitors" clause. Admittedly, some of these cases involve actions under the Jones Act with its three-year statute of limitation and which has no bearing on *274 tort actions under general maritime law. However, we do not consider these distinctions to be sufficient to overcome the conclusion expressed in these cases that the doctrine of laches is a substantive right.
Our review of the state jurisprudence relating to the application of prescription vis-a-vis laches reflects that the Supreme Court has never passed upon the matter and the opinions of the intermediate Appellate Courts are in conflict and therefore indecisive.
This Circuit first considered the matter in the case of Beyer Transp. Co. v. Whiteman Contracting Co., 187 So. 143 (La. App.Orl.1939), which involved a reconventional demand based upon a maritime tort. The court held the claim being ex delicto and filed in the state court was governed by the prescriptive law of the forum. It is interesting to note that the court observed no reason was advanced to prevent it from applying prescription nor were any authorities cited to show that it would have been treated differently on the admiralty side of the United States District Court.
Though not dispositive of the issue, subsequent decisions of the Fourth Circuit, by analogy, tend to confirm that the maritime law must be applied by the state courts in maritime matters. In the cases of Guilbeau v. Calzada, 240 So.2d 104 (1970), and Ferdinandtsen v. Delta Marine Drilling Company, 235 So.2d 641 (1970), the court decreed that the appellate review of jury verdicts in maritime cases must be the same as those exercised by federal courts. In other words the judicial review is restricted to a determination if there is an evidentiary basis, within reason, from which the jury reached its conclusions of fact. Though our Constitution vests the intermediary appellate courts with the right of review of both law and fact, in matters maritime the admiralty law shall prevail, and the court is powerless to redetermine facts found by the jury even though it may reach a different conclusion or be of the opinion that a contrary deduction is more reasonable. The opinion of the First Circuit on this question is reflected in the cases of H & H Boat Rental, Inc. v. Vidos, 225 So.2d 308 (1969), and American Auto. Ins. Co. v. Twenty Grand Towing Co., 225 So.2d 114 (1969), that the doctrine of laches will apply to those matters in the state court governed by admiralty law, such as maritime torts, and that prescription is merely one of the criteria for ascertaining whether there was an ordinate delay in connection with the filing of the proceedings.
A different view was adopted by the Third Circuit in the case of Istre v. Diamond M. Drilling Company, 226 So.2d 779 (1969). After an exhaustive review and analysis of both state and federal jurisprudence, the court concluded on rehearing that the Louisiana prescriptive statute, being procedural in nature and also the law of the forum, should prevail over the doctrine of laches in maritime matters. Though writs were granted by the Supreme Court, the matter was compromised and the appeal dismissed while the writs were pending.
As is evident from the foregoing recitation of authorities, our intermediate appellate courts' expressions are not in accord. This lack of uniformity of opinion engenders doubt and misgiving which make the issue even more perplexing. Based upon the decrees of the United States Supreme Court in the cases of Pope and Garrett, and their application in the cases of Oroz and Larios, together with the rationale emanating from this Circuit expressed in the Guilbeau and Ferdinandtsen cases, we are constrained to hold that the admiralty doctrine of laches rather than our statute of prescription must be invoked in determining the timeliness in the filing of a maritime tort action in our state courts.
For the foregoing reasons the judgment of the lower court is reversed and the matter is remanded for further proceedings in accordance with this judgment, costs to await the final determination of the matter.
Reversed and remanded.
NOTES
[1] Restatement, Second, Conflict of Laws §§ 142 and 143.